# JUNE, 1925.

## H. P. Boxley v. The State.

No. 9246.   Delivered June 3, 1925.

1.—Murder—Continuance—Lack of Diligence—Properly Refused.

Where no subpoena was issued for a witness until fourteen days after the returning of the indictment, and no cause shown for such delay, and where the testimony of the absent witness was not such that a different result more favorable to appellant might have accrued, no error is presented in the refusal of the continuance.

2.—Same—Continued.

The statute demands diligence in the issuance of process for witnesses, and where the delay is substantial and unexplained, the diligence is not regarded sufficient to warrant this court to hold that the trial court abused its discretion. Following Boaz v. State, 231 S. W. 790 and numerous other cases cited.

3.—Same—Continuance—Discretion of Trial Court—Rule Stated.

The truth of the averments in the application for a continuance, as well as the merit of the ground set forth therein shall be addressed to the sound discretion of the trial court, and his action in denying it, is not to be reviewed upon appeal, unless when considered in the light of the evidence adduced upon the trial, the testimony set forth in the application was of a material character, and probably true. See subdivision 6, Art. 608, C. C. P. Following Grayson v. State, 91 Tex. Crim. Rep. 137 and other cases cited. Also see Branch's Ann. Tex. P. C. sec. 305.

**4.—Same—Confession of Defendant—Properly Admitted.**

Where a confession of the accused has been made in compliance with the statute, and all of the warning prescribed by the statute has been given, the fact that other and additional warnings were given would not affect the admissibility of the confession. Distinguishing Robertson v. State, 54 Tex. Crim. Rep. and other cases cited by appellant.

**5.—Same—Evidence—Properly Excluded.**

Under the issue as presented to us by appellant's bill of exception, the court did not err in refusing to permit the witness Tukes to rehearse a statement made by the mother of appellant, to him, purporting to be in the nature of threats made by the sheriff to prosecute her for the homicide. If offered to impeach the confession introduced, it was without probative force, and was clearly a hearsay declaration.

**6.—Same—Argument of Counsel—Held, Not Improper.**

· Under the facts and motive disclosed by the evidence in this case, we cannot condemn the argument of state's attorney that "The defendant in this case is guilty of a cold-blooded assassination of old Tom Coleman, and if there ever was a case in which a defendant deserved the death penalty, this is such a case." We believe the statement to have been fairly deducible as an inference from the testimony, and find no case holding that similar remarks, have been *held* sufficient to reverse the judgment. See Branch's Ann. Tex. P. C. Sec. 365. Following Pierson v. State, 18 Tex. Crim. App. 563 and other cases cited.

**7.—Same—Charge of Court—Held, Correct—Not on Weight of Testimony.**

The court's charge submitting the issue of the admissibility of appellant's confession, is not objectionable as being on the weight of the evidence. It was properly made and authenticated. He testified that he signed it. Witnesses were not necessary to that fact, nor was it necessary that they be called to verify it. See Art. 810, C. C. P.

**8.—Same—Charge or Circumstantial Evidence—Held Proper.**

The charge of the court in appropriate language that in the event they failed to consider the purported confession, that the state's case would rest upon circumstantial evidence alone, and embracing an instruction accurately stating the rules of law applicable to that class of evidence, was very proper practice, and was not subject to the criticism that it emphasizes the confession by calling attention to it. Following. Sparks v. State, 34 Tex. Crim. Rep. 88 and many other cases cited.

**9.—Same—Sufficiency of Evidence.**

The sufficiency of the evidence, whether treated as circumstantial or direct, is quite sufficient to support the verdict. None of the rulings of the court of which complaint is made impress us as presenting any deviation from the rules of practice intended to preserve the rights of an accused, and nothing in the record indicates that the verdict was otherwise than the result of a fair and legal trial by an impartial jury, and the judgment is affirmed.

Appeal from the District Court of Brazoria County. Tried below before the Hon. M. S. Munson, Judge.

Appeal from a conviction of murder; penalty assessed at death.

The opinion states the case.

*Rucks & Enlow,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is murder; punishment fixed at death.

On the night of May 2, 1924, while in his house and lying upon the bed, Tom Coleman, a negro man, was killed by the discharge of a shotgun which was fired from the outside of the house and through the screen door. The appellant, a negro thirty-three years of age, was the stepson of the deceased. Some months before the death of the deceased, a policy of insurance had been issued upon his life at the instance of the appellant, who was named as the beneficiary. The policy was an accident and health policy for the maximum sum of $2500.00 in case of death, and for stipulated indemnities in case of sickness or accident. On the 26th of April, the deceased, while in his house received a pistol-shot wound, the weapon having been discharged through the window. There was evidence to the effect that a short time after the incident last above mentioned, the appellant reported to the insurance agent through whom the policy was issued that the deceased had been killed by Mexicans or some one and requested that steps be taken so that the appellant might realize upon the policy. While preparations to that end were being made, appellant received a letter advising him that his stepfather had been wounded but not killed. He then went in an automobile to the home of his stepfather where he remained until after the homicide. Other inmates of the house in which the deceased was killed were his wife (the mother of the appellant), a youth, a son of the deceased, a sister of the appellant, her husband and baby. The homicide took place between nine and ten o'clock at night. The appellant's automobile was standing near the house in the neighborhood of fifteen feet from the door through which the shot was fired. According to the testimony of his mother and of the appellant, he at the time was at or near his automobile doing some work upon it. She said that she saw no gun in his hand but that she rushed to the door upon the firing of the shot and saw no one save the appellant. He testified that while he was in a stooping position working on the automobile a shot was fired and immediately thereafter he saw two persons flee.

In a statement in writing, signed by the appellant and introduced in evidence, he stated that he had killed the deceased.

The State introduced circumstances tending to show that the appellant fired the shot which wounded the deceased a few days antecedent to his death. This was controverted by the appellant's testimony and by evidence introduced by him tending to show that he was not present at that time.

An additional recital of the evidence is not deemed necessary further than that which may appear in connection with the bills of exception.

His first complaint is the denial of his application for a continuance. Three witnesses were named, two of whom appeared upon the trial. From the absent witness, Hannah Morgan, appellant expected testimony to the effect that late in the evening of the day upon which the deceased was first shot, she met the appellant upon the streets of the city of Houston in Harris County, and that he requested that he be permitted to spend the night at her house, but that she declined for the reason that room was inadequate. In the application for a continuance it is stated that the place of residence of the witness was unknown. On the 22nd of September a subpœna was issued to Harris County in which her specific address was given. The subpœna was returned on the 29th of September with the statement that the witness was not at the address designated and could not be found. The homicide took place on the 2nd of May. The previous shooting occurred on the 26th of April. Soon after the homicide, appellant became aware of the fact that he was under suspicion and several circumstances were introduced tending to show that he was conscious of guilt. One of these was the hiding of the insurance policy, which occurred soon after the homicide. Others consisted of declarations of the appellant made about that time. After the homicide he went to the city of Tyler, where he remained until the date of his arrest, which we infer from the record, was about the 8th day of September. At all events, he was incarcerated at that time in jail in Brazoria County.

Explaining his action in overruling the motion for a continuance, the trial judge said that he regarded the diligence as inadequate and that the purported testimony was not such as would have probably brought about a verdict more favorable to the accused. It might be added, we think, that the probability of securing the absent testimony by delay was not made apparent. From the qualification of the bill, it appears that at the time of his indictment, appellant was present and was represented by counsel. The unexplained delay of fourteen days in issuing subpœna for the witness under the circumstances, in our opinion, justified the conclusion of the trial judge that the rule of diligence was not met. The statute demands diligence in the issuance of process for witnesses, and where the delay is substantial and unexplained, the diligence is not regarded sufficient to warrant the appellate court to hold that the trial court abused its discretion. Among the cases illustrating this principle see Boaz v. Sate, 231 S. W. Rep. 790; Mann v. State, 87 Texas Crim. Rep. 142; Mills v. State, 83 Texas Crim. Rep. 515; Walker

v. State, 83 Texas Crim. Rep. 484; Wilson v. State, 87 Texas Crim. Rep. 625; Vernon's Texas Crim. Stat., Vol. 2, p. 307, note, 4, and cases collated. See also Hornsby v. State, 91 Texas Crim. Rep. 168. The truth of the averments in the application for a continuance, as well as the merit of the ground set forth therein, shall be addressed to the sound discretion of the trial court and his action in denying it is not to be reviewed upon appeal unless, when considered in the light of the evidence adduced upon the trial, the testimony set forth in the application was of a material .character and probably true. This is the substance of subdivision 6 of Article 608, C. C. P. Many cases applying this statute are collated in Branch's Ann. Texas P. C., sec. 305. On the subject, see also Grayson v. State, 91 Texas Crim. Rep. 137; Bedford v. State, 91 Texas Crim. Rep. 285; Weaver v. State, 91 Texas Crim. Rep. 637; Evans v. State, 91 Texas Crim. Rep. 579; Cruz v. State, No. 8711, recently decided. In the light of the record, we are constrained to the view that in refusing to continue the case and in refusing a new trial based thereon, the trial court committed no error.

The confession of the appellant reads as follows:

"I, H. P. Boxley, after having been warned by *R. A. Bassett, the person to whom this statement is made,* first, *that I do not have to make any statement at all;* secondly, that any statement that I make must be freely and voluntarily made; and thirdly, *that any statement that I make cannot be used in my favor but may be used against me in the trial of any case growing out of the facts concerning which this statement is made,* do hereby made the following free and voluntarily statement:—My name is H. P. Boxley. I killed Tom Coleman and no one else had anything to do with it. Signed H. P. Boxley. Witnesses: T. C. Brooks and S. T. Yancey."

Against its receipt in evidence several criticisms are addressed. In the statute it is declared that the statement must be voluntarily made after having been warned: "*first, that he does not have to make any statement at all; second, that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made.*" (C. C. P., 810). The warning embraced in the confession in the instant case contains all that the statute requires. It is true that it contains more than was demanded by the statute, but we cannot bring ourselves to conclude that the additional warning either vitiates the confession or impairs its admissibility. The recital in the confession that "I, H. P. Boxley, after having been warned by R. A. Bassett, the person to whom this statement is made," seems to bring it clearly within the terms of that part of the statute. which requires that the written statement "shall show that he has been warned by the person

to whom the same is made.'' We confess our inability to discern any-
thing in the cases cited by the appellant as condemning the con-
fession as would warrant its exclusion upon the ground that it did
not comply in form to the statute. The cases cited are Robertson v.
State, 54 Texas Crim. Rep. 21; Jenkins v. State, 131 S. W. Rep.
542; Henzen v. State, 137 S. W. Rep. 1141; Burton v. State, 137
S. W. Rep. 1145; Young v. State, 54 Texas Crim. Rep. 417. They
are clearly distinguishable from the fact that in each of them there
is a manifest failure to embrace in the confession that the warning
was given by the person to whom the confession was made.

In another bill complaint is made of the rejection of the testi-
mony of the witness Tukes rehearsing a statement made by
Isabella Coleman, mother of the appellant, in the presence of the
witness, in which she said that before she went before the grand
jury the sheriff said to her:

''We are tired of fooling with you niggers, and that she, Isabella
Coleman, knew who shot Tom Coleman and that she had better go
ahead and tell who shot Tom Coleman and that if she did not that
they were going to get either her or defendant Boxley.''

The setting in which this testimony was offered is not furnished
by the bill. Apparently it was hearsay. The court, in qualifying
the bill, states that it was hearsay, and that no predicate was laid
to impeach Isabella Coleman. It seems that unless the testimony
was made admissible by proper predicate, either as impeaching or
supporting testimony, it would not have been admissible. Clearly,
the bill fails to show that in refusing to receive it, the learned trial
judge was in error. Explanatory of the circumstances under which
the confession was made, appellant testified that his mother had told
him that the sheriff had said to her: ''I am tired of worrying
with you niggers—you or Porter one has to die''; that she further
told him that they wanted her to say that he had killed the deceased;
that she expressed a fear that if she did not give such statement
they would kill her and that to relieve her of the distress, he decided
to assume the responsibility for the homicide, though as a matter
of fact, he did not commit it. Isabella Coleman testified that before
going to the grand jury, she had a conversation with the appellant
from which we quote from her:

''I was telling him it looked like they was trying to get me, and
I says: 'I don't want nothing like that; I ain't done no killing, and
I wasn't guilty'.''

The sheriff and the County Attorney Bassett testified to the
voluntary nature of the confession. There was no predicate laid
for the impeachment of either of these witnesses. The court in-
structed the jury to disregard the confession unless they found
it to be freely and voluntarily made without compulsion or per-
suasion, and specifically told them that they were not to consider

it if it was made upon threats, coercion or other improper influences or was induced by the belief that it would prevent danger or injury to his mother.

Counsel for the State, in addressing the jury, said:

"The defendant in this case is guilty of a cold-blooded assassination of old Tom Coleman, and if there ever was a case in which a defendant deserved the death penalty this is such a case."

From the State's standpoint, the evidence in the case was such as would justify the inference expressed in the argument that the appellant was guilty of assassinating the deceased. Within limits which the law fixed, the jury had the discretion of assessing the penalty, and we are unable to perceive that the argument, in the light of the evidence adduced, was one so offensive to the rules against improper argument as would justify a reversal of the judgment. It has often been held that the opinion of counsel not fairly deducible as an inference from the testimony would be an improper argument. However, we are aware of no instance in which, under circumstances such as the record in this case reveals, that remarks similar to those under consideration have been held sufficient to reverse the judgment. See authorities cited in Branch's Ann. Tex. P. C., Sec. 365; also Pierson v. State, 18 Texas Crim. App. 563; Young v. State, 19 Texas Crim. App. 543; Kennedy v. State, 19 Texas Crim. App. 634; Habel v. State, 28 Texas Crim. App. 600; Thomas v. State, 33 Texas Crim. Rep. 607.

In the beginning of the fourth paragraph of the charge of the court, this language was used:

"The State has introduced in evidence before you a paper alleged to be and purporting to be a statement or confession of the said H. P. Boxley, made by him to the District Attorney, Mr. R. A. Bassett. You are instructed that the confession of a defendant may be used in evidence against him if it appears that the same was freely and voluntarily made and without compulsion and persuasion."

Objection was urged that this charge was upon the weight of the evidence in that it assumed that Brooks and Yancey were present when the confession was made. It seems that as originally written, the charge embraced the statement that it purported to be witnessed by Brooks and Yancey. Upon exception, however, that phase of it was eliminated, and when read to the jury, it contained the clause in question as above quoted. Bassett, the County Attorney, testified that the statement was made to him and by him reduced to writing. It bore the signature of the appellant. He testified that he signed it. Witnesses were not necessary, nor was it imperative that they be called to verify it. See Art. 810, C. C. P.

The court instructed the jury in appropriate language that in the event they failed to consider the purported confession, that the State's case would rest upon circumstantial evidence alone, and

embraced an instruction accurately stating the rules of law applicable to that class of evidence. This procedure evidences no transgression of the rules of practice or any matter prejudicial to the appellant. On the contrary, it impresses us as appropriate. The criticism of the charge in that it emphasizes the confession by calling attention to it is not regarded as sound. Appellant, after signing the statement, by his testimony challenged the voluntary nature of it. There was thus presented an issue of fact which it was incumbent upon the court to submit to the jury. Sparks v. State, 34 Texas Crim. Rep. 88; Paris v. State, 35 Texas Crim. Rep. 93; Morris v. State, 39 Texas Crim. Rep. 376; Cortez v. State, 43 Texas Crim. Rep. 383; Jordan v. State, 51 Texas Crim. Rep. 146; McVeigh v. State, 43 Texas Crim. Rep. 117; Branch's Ann. Texas P. C., Sec. 75.

The statement of facts has been carefully scrutinized, though no attempt has been made to go into detail in stating all of the circumstances adduced in evidence. The sufficiency of he evidence, whether treated as circumstantial or direct, is quite sufficient to support the verdict. None of the rulings of the court of which complaint it made impress us as presenting any deviation from the rules of practice intended to preserve the rights of the accused and nothing in the record indicates that the verdict was otherwise than the result of a fair and legal trial by an impartial jury.

The judgment is affirmed.

*Affirmed.*