J. C. STEVENS v. THE STATE.

No. 22470. Delivered April 7, 1943.
Rehearing Denied May 19, 1943.

The opinion states the case.

*Pete E. Turner,* of Midland, for appellant.

*Joseph H. Mims,* of Midland, Martelle McDonald, District Attorney, of Big Spring, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for a term of 99 years.

The record discloses that on the 24th day of July, 1942, Guy Rhodes, "Bell Cord" Rutherford and the appellant came into the T. P. Cafe, where the deceased, A. E. Walker, was employed as a bartender. The three persons first mentioned had been in the cafe for quite a while drinking beer before Walker came to work about 7:00 P. M., when appellant called for a quart of beer. The deceased told him that he could not let them have any more; that he had orders from his "boss" to that effect, whereupon one of the three remarked: "You are a God damn liar." Rhodes then threw a bottle at the deceased, struck him on the side of the head, cut his ear and caused him to stagger towards the kitchen door. At this time, the appellant ran around the counter and stabbed or cut Walker twice in the stomach from the effect of which he died.

Appellant testified in his own behalf that at the time in question he, Rhodes and Rutherford were sitting on stools at the counter drinking beer; that he (appellant) was intoxicated and the deceased accused him of "popping off," whereupon he called the deceased a liar; that when he did so, the deceased

hit Rhodes, who threw a glass at the deceased, whereupon the deceased started running towards the kitchen, where appellant intercepted him; that deceased then placed his hands on appellant's shoulder and said: "I am going to throw you out of here," whereupon he cut the deceased with a pocket knife. The knife was introduced in evidence and was shown to have a blade three inches in length.

Bills of Exception Nos. 1 and 2 may be considered and disposed of together since they complain of the same matter, except that Bill No. 2, in addition to the matter complained of in Bill No. 1, asserts misconduct of the jury. Consequently, in discussing and disposing of Bill No. 2, we will necessarily dispose of the question presented in Bill No. 1. It appears from Bill of Exception No. 2 that after Dr. Leggett had testified that he attended the deceased and after he had described the location of the wounds on the body and the extent of the injury caused to the vital organs, he was passed to the defendant's counsel for cross-examination; and after appellant's counsel had asked the witness if the deceased had on a shirt when he was brought to the hospital and received an affirmative reply the witness was passed back to the State. Thereupon, the District Attorney arose from his chair, picked up a shirt, which was rolled up in a bundle, and started towards the witness with it for the purpose of having the witness identify it and then to introduce it in evidence; to which appellant objected on the ground that it had blood on it; that it did not serve to elucidate any issue inasmuch as there was no controversy as to the nature and location of the wounds inflicted upon the deceased. The court requested both the District Attorney and counsel for the defendant to step up near the bench and then informed the District Attorney that he would sustain the defendant's objection. In the meantime, Mr. Glenn E. Crays, one of the jurors, fainted and the court ordered the sheriff to retire the jury. Defendant's counsel then presented to the court a motion to declare a mistrial, claiming that the blood on the shirt caused the juror to faint. When this motion was presented, the court heard evidence thereon and at the conclusion thereof overruled the same, to which ruling appellant excepted as shown by his Bill of Exception No. 1. In his motion for new trial appellant again complained of the action of the District Attorney as aforesaid, and also of the fact that one of the jurors, during their deliberation, remarked: "I wonder if this is the same fellow who cut his wife several years ago." The State contested the motion, and upon the hearing thereof, the court heard evidence on the issues thus raised. The evidence introduced by the defendant on the subject shows that at or about the time the

District Attorney picked up the shirt and started with it toward the witness, Dr. Leggett, for the purpose of having him identify it, juror Crays fainted. Appellant contends that the fainting was caused by the blood on the shirt. Jurors McMillian, Andrews, Lord and Meriweather saw nothing at all on the shirt or jacket which would indicate that there was blood on it. Juror Hobbs did not remember whether he saw any stains on it or not. He did not see anything which he thought was blood. Juror Cox stated that he saw a spot on the shirt which appeared to be blood. Mr. Bedford saw one dark spot on it but he could not tell what it was. Mr. Messamore saw some splotches on it but could not say it was blood. Juror Crays, who had fainted during the trial, testified that he did not see any blood on the bundle; in fact, he did not see the shirt at all; that prior to the time the District Attorney arose from his chair he (Crays) felt that he was in the early stages of fainting and started to take off his coat; that he felt it was due to the heat as it was extremely hot; that he did not hear appellant's counsel object to the admissibility of the shirt in evidence because he had apparently passed out; that his condition of fainting occurred at the rarest intervals. It is obvious from his testimony that he did not see the shirt at all; that his fainting spell was due to the extreme heat. Consequently the action of the District Attorney in picking up the bundle and starting to the witness stand with it for the purpose of having the witness, Dr. Leggett, identify it could not have had any effect on the minds of the jurors which was calculated to prejudice the appellant in his legal rights.

While it is true that, as a general rule, bloody garments are not admissible in evidence unless they serve to illustrate some point or solve some controverted issue as to the nature, character, extent and location of the wounds inflicted, the reason for the rule seems to be based on the theory that the ghastly and gruesome appearance of such bloody garments may inflame the minds of the jury to the prejudice of the accused. But when the reason for the rule does not exist, the rule is not applicable. In the instant case, it appears from the testimony that the shirt or jacket, while rolled up in a bundle, had only one or two small spots of dark color which were visible thereon and which two or three jurors took to be blood. It is true that Mr. Tyson, the Chief of Police, on the motion for new trial, when the shirt was spread out, testified that he could see quite a number of bloodstains on the garment in question. Consequently there were more numerous bloodstains visible on the shirt when spread out than when it was rolled up. On the facts of this particular case, we would not be justified in holding that the

shirt or garment was of such ghastly and gruesome appearance as was calculated to inflame the minds of the jurors to the prejudice of the appellant.

In the case of Long v. State, 48 Tex. Cr. R. 175, 88 S. W. 203, Judge Davidson, in discussing a question similar to the one before us, among other things, said:

"Where it is of such slight consequence as not to have assisted in bringing about a conviction or the enhancement of the punishment, we do not believe an appellate court would be called on to reverse."

The next question raised by the appellant relates to some alleged misconduct of the jury. It appears from the record that the jury had retired and after they had decided upon the appellant's guilt and while discussing whether the punishment should be by death or by imprisonment in the penitentiary for life or for 99 years, some member of the jury remarked: "I wonder if the defendant is the same one who attempted to or had cut his wife several years back." No mention seems to have been made of any trial of appellant for such an offense and no discussion was had thereon. The statement by the juror was in the nature of an inquiry and not an assertion of a fact. Since neither that juror nor any other member of the jury knew that appellant was the same person who had theretofore cut his wife or was charged therewith, it would seem unreasonable to say that anyone was influenced by the remark. Even the existence of a most reprehensible conduct on the part of the accused on trial of which the jury had no knowledge could not have any unfavorable effect upon their minds. That the jurors had already agreed upon the appellant's guilt and were considering whether to assess his punishment at death or in the penitentiary for life or for 99 years when the alleged statement in the nature of any inquiry was made is not controverted, and since they gave him the lowest punishment which they were discussing at the time, no injury is shown to have resulted to him by the remark complained of. In support of what we have said we refer to the case of Smith v. State, 52 Tex. Cr. R. 344; also Lera v. State, 165 S. W. (2d) 92.

By Bill of Exception No. 3 appellant complains of the following remark by the District Attorney in his argument to the jury:

"If I were a juror and the evidence was presented to me such as has been presented to you by the state in this case,

particularly the evidence of the defendant himself, I believe I could give the death penalty."

The objection urged against the argument was that it was inflammatory, prejudicial and an invasion of the province of the jury. We do not believe that the argument is subject to the objection. The prosecuting attorney did not urge the jury to inflict the death penalty regardless of any evidence. The most that can be said is that the prosecuting attorney stated that he believed that if he were a juror he could give the death penalty, based upon the evidence, particularly that of the defendant. He was basing his belief upon the evidence and not upon some extraneous fact. That the jury was not influenced by the remark is demonstated by their verdict in declining to assess the death penalty. In 42 Tex. Jur. p. 272, sec. 210, it is said:

"Argument which presents the belief of the state's attorney that the defendant should be convicted is, apparently, considered by some authorities not to be ground for reversal if the language employed bases the attorney's belief on the evidence in the case and not on something extraneous thereto."

This text finds support in the case of Graham v. State, 125 Tex. Cr. R. 531; Boxley v. State, 100 Tex. Cr. R. 334. It is our opinion that the argument complained of would not justify a reversal of the judgment of conviction.

By Bill of Exception No. 4 appellant complains of the action of the trial court in declining to place the jurors under the rule who had been summoned to give testimony on the motion for new trial. This bill is deficient in that it fails to show that the court permitted the jurors to testify over the appellant's objection. It occurs to us that in the event the court declines to put a witness under the rule and he is permitted to remain in the court room and when called on to testify there is not any objection urged against his testimony, the failure on the part of the court to place the witness under the rule is waived. A bill of exception, to be sufficient must within and of itself disclose the error complained of. See Ralph v. State, 148 S. W. (2d) 401; Branch's Ann. Tex. P. C., p. 131, sec. 207, and cases there cited. However, it seems to be an established rule that trial courts are given wide discretion in matters of this kind and unless it is made to appear that the court has abused his discretion with respect thereto, we would not be authorized to reverse the case. See Bishop v. State, 81 Tex. Cr. R. 96, and

cases there cited. In the present instance, no abuse of the court's discretion is reflected by the bill.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again complains because of the attempted introduction of the bloody shirt worn by the deceased at the time of the killing, and again asserts that such an endeavor upon the part of the State's attorney was the cause of the fainting of one of the jurors, which occurred at about the same time. He bases much of his argument upon a hypothetical question asked by a physician, in answer to which, in the hearing on the motion for a new trial, the doctor testified:

"A. First, you have to consider that Dr. Leggett described in detail his operation on the deceased; second, you have to consider that Mr. Crays saw the bundle but he don't remember it, because we know the stage of the brain, particularly before fainting a person can't remember the last thing he saw. We have no particular name for it. This is called retrograde amnesia.

"Q. Answering my question, what, in your opinion, caused him to faint—all those things? Is it all of those things that you have described? A. It is probably one or the other.

"Q. It could be one or the other. A. Yes.

"Q. I will ask you this: assuming all the things to be true as I have said in my other question, would the witness remember having seen the jacket? A. He don't need to remember that. He may have seen it, but his mind didn't register it. * * *

"Q. You don't tell the court he did see the jacket? A. No. I didn't say that."

The juror who fainted testified that he did not see the garment, and that in his opinion he became overheated and fainted from the heat. We do not think the above expressed opinion, whatever it might be, has sufficient strength to show that the juror fainted at the sight of the dark stains on the jacket of

the deceased man when same was offered before the jury. The objection thereto was sustained, and the garment was not unrolled nor further exhibited before the jury.

Appellant also again complains because of the trial court's failure to place the members of the jury under the rule upon the hearing of the motion for a new trial. Such matters are usually within the discretion of the trial judge, and such discretion will not be revised except in clear cases of abuse. See Branch's Criminal Law, Sec. 881, where many cases are cited sustaining such proposition. We do not think any abuse of discretion is here shown.

Appellant's attorney, appointed by the court, is to be commended for his diligent efforts in his client's behalf, but we remain impressed with the belief that no error is shown in the trial hereof.

The motion is therefore overruled.