### T. J. Robertson v. The State.

No. 3925. Decided June 10, 1908.

**1.—Murder—Confessions—Warning—Statutes Construed.**

Under article 790, Code Criminal Procedure, as amended by the Act of the Thirtieth Legislature, p. 219, no confession of one in jail, or in confinement can be admitted in evidence unless it appears in the written statement itself that the person making same had been warned by the person to whom the same was made; that he did not have to make such statement, and that the same so made can be used as evidence against him; and where such statement

appeared in the certificate of the officer attached to such written statement, it was insufficient.

**2.—Same—Written Confession—Defendant as a Witness.**

Where upon trial for murder the written confession of defendant was intro‑ duced in evidence, but did not contain in itself a statement that defendant had been warned, etc., which was contained in the certificate of the notary public attached thereto, the same was insufficient and reversible error; and said error was not cured by the fact that defendant testified in his own behalf, but his testimony varied in material respects from that contained in his written confession.

**3.—Same—Practice on Appeal—Public Policy.**

Where it appeared on appeal from a conviction of murder in the second degree that illegal testimony had been admitted on the trial below, which injured the rights of the defendant, the judgment of conviction must be reversed re‑ gardless of the question as to whether the State can secure a conviction on another trial.

Appeal from the Criminal District Court of Galveston.   Tried below before the Hon. J. K. P. Gillaspie.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Marsene Johnson, O. S. York, George G. Clough* and *Aubrey Fuller,* for appellant.—On question of written confession: Pratt v. State, 53 Texas Crim. Rep., 281; 109 S. W. Rep., 138; Barth v. State, 39 Texas Crim. Rep., 381; Adams v. State, 48 Texas Crim. Rep., 90; 86 S. W. Rep., 334; art. 790, Code Crim. Proc., as amended, 1907.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Galveston County, Texas, for the murder of one W. T. Owin.   He was convicted in the court below of murder in the second degree and his punishment was assessed at confinement in the penitentiary for a term of fifteen years.   On the trial the State introduced, over the objection of appellant, the following alleged confession:

"GALVESTON, TEXAS, August 18, 1907.

"My name is Thomas J. Robertson.   I have resided in Galveston a little over two months at 3908 Avenue I.   On the night of the 17th day of August, 1907, Harry De Arment, J. B. Martin and I went out to the beach and remained there until about 10:45 p. m., arriving at Ciucci's, corner Thirty-fifth and Avenue H, a little after 11 p. m. Harry De Arment, J. B. Martin, Willie Ennis, Will Bethereever and I had several drinks together.   I met a man in the bar-room who I learned later to be W. T. Owins.   I asked him, in a jest, to buy me a drink, to which he took exceptions and called me a son of a bitch..   I then said, 'If you are looking for a fight you will get it.'   He, Owins, then started at me with a knife and slashed me across the back, cut‑ ting my coat about four inches long, in fact, cut me to the skin.

Then two Italians tried to separate us. They shoved me out the front way and he through the front door. All the parties in company with me started for home. On Thirty-seventh and Avenue H we parted. J. B. Martin and I went south on Thirty-seventh to Avenue I. It was then almost 1 p. m. Martin and I went west on Avenue I to home. When I arrived home, instead of going to my room, I went to my brother's room, where he and his wife slept. I was lying across the head of their bed when the officers arrested me. I will also state that I was drinking freely that night and was pretty full. I wish also to add when I was ejected from Ciucci's bar-room I waited on the outside in hopes that Owin would come out so as I could get satisfaction for what he had done to me. My friend, J. B. Martin, caught hold of me and forced me away from Ciucci's corner. After I went home I got my brother's gun and went back and met W. T. Owin on Thirty-seventh and Avenue I; he asked me if I was the man he had trouble with. I did not recognize him at first. I then told him yes. He started at me and I struck him with the gun and it went off twice. I didn't know whether I shot him or not. I then ran west on Avenue I between Thirty-seventh and Thirty-eighth streets. I went home and told J. B. Martin that I met this man Owin and thought I hurt him pretty bad. I also told my brother that I had a little trouble. I didn't know Mr. Owin before I met him at the Ciucci grocery store that night. The foregoing is a true statement of the difficulty I had with Mr. Owin." This confession was witnessed by J. A. Johnstone, D. J. Curtain and Fred Rexer. This instrument was acknowledged in the following form before Geo. A. DeQuoy, a notary public in and for Galveston County, Texas:

"On this the 18th day of August, A. D., 1907, personally appeared before me T. J. Robertson, who acknowledged that he makes this voluntary statement and confession after having been warned by Sergeant D. J. Curtain, first that he did not have to make any statement at all; second, that any statement made might be used in evidence against him on his trial for the offense concerning which the confession is herein made. Sworn to and subscribed before me, on this 18th day of August, A. D., 1907." There was much evidence introduced before the court in the absence of the jury in reference to whether or not in fact the appellant had been warned and if so when and by whom, and the circumstance generally touching the matter of securing such confession. In view of our conclusion in respect to the matter, it seems unnecessary to burden the opinion with a statement of these matters. Among other things this confession was objected to on the ground that the written statement, itself, does not show or contain a recital or statement that appellant had been warned by the persons to whom same was made. The Acts of the last Legislature, p. 219, amending article 790 of our Code of Criminal Procedure, is as follows:

" Article 790. The confession shall not be used if at the time it was made the defendant was in jail or other place of confinement, nor while he is in the custody of an officer, unless made in the voluntary state-

ment of the accused, taken before an examining court in accordance with law, or be made in writing and signed by him, which written statement shall show that he has been warned by the person to whom the same is made: First, that he does not have to make any statement at all; Second, that any statement made may be used in evidence against him on trial for the offense concerning which the confession is therein made." * * * We think, undoubtedly, that this instrument was not admissible as a confession in view of the provision of our Code of Criminal Procedure as same now stands. Whatever may be thought of the wisdom of the Act of the last Legislature in respect to confessions; it is certain that the Legislature intended that before any confession of one in jail, or in confinement should be admitted, that such instrument should contain, within itself, evidence that the person making same had been warned by the person to whom same was made that he did not have to make any statement at all and that any statement so made could be used in evidence against him on his trial for the offense concerning which the confession is therein made. The fact that such statement is contained in the certificate of the notary public does not meet the requirements in the statute. It can no more supply the recital of such fact in the statement than could an acknowledgment supply or take the place of a substantial matter required by law to be contained, or included in a deed or other instrument of writing. This was substantially conceded in argument but the claim was made that after the admission of the alleged confession in evidence, the appellant in his own behalf became a witness and testified on the stand to the same facts as are included in his confession offered by the State. If this be true it would present a question of some difficulty and we should be inclined to hold that the error in admitting the confession was thereby cured; but while it may be conceded that the testimony given by appellant on the witness stand is in many respects similar to that contained in his written confession, they are not in many respects similar and in some respects are widely variant and in matters about which the confession contradicts the testimony of the witness on the witness stand, and must have been used to his detriment and disadvantage. It will be observed that in the statement above quoted appellant states, as follows: "After I went home I got my brother's gun and went back and met W. T. Owin on Thirty-seventh and Avenue I; he asked me if I was the man he had trouble with. I did not recognize him at first. I then told him yes. He started at me and I struck him with the gun and it went off twice." In his testimony on the witness stand he testified as follows: "I goes into my room to undress and found I had been cut with the knife, my skin had been cut; then I goes into my sister-in-law's room and gets a gun and she says to me; 'What are you doing?' I says 'I am going to have the fellow arrested for trying to kill me.' I went downstairs and out on I, and when I got down on Thirty-seventh and I, I met this fellow and he asked me, 'are you the fellow I had the trouble with in the saloon?'

I didn't know him when he spoke, and kind of passed him when I recognized him, and said 'yes.' Then he says, 'By God, we will just finish it up right now,' and he made at me, and I struck him with the gun." It will be observed that in his written statement he gives no reason for going out of his room after he secured the pistol and leaves it open to the suspicion, if indeed it does not justify, the belief that his object and purpose in leaving the house was to hunt the deceased with the view of doing him serious injury. In his testimony on the witness stand, he states in substance that he left the house for the purpose of securing the arrest of the person who had assaulted and cut him. There are other differences between the statement and the testimony of the appellant on the witness stand, but the above will suffice to demonstrate that there was a substantial difference between them. So that we are not only unable to hold that the introduction of the statement was immaterial and not probably hurtful, but the conviction is forced on us that same was seriously prejudicial to the interest of appellant. So believing and being convinced the instrument was not admissible as a confession, it must result that the case must be reversed.

We are appealed to on the submission of this case with great zeal and earnestness not to reverse the case for the reason that to do so might and probably would result in the State's being unable to secure a conviction on another trial. The reversal may have this effect. Whether it does or not, we can not know or say. As presented to us it is clear, testimony was admitted against the appellant which the law says shall not be admitted. That testimony, inadmissible and illegal as it was, was both material and hurtful. It is our duty to act on the record as same is presented to us. What its effect may be in the future ought not to and will not control us. For the error pointed out the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*