SAM YOUNG v. THE STATE.

No. 4120.   Decided October 28, 1908.

**1.—Murder—Evidence—Motive.**

Upon trial for murder where the evidence showed that defendant killed deceased and shortly thereafter shot his (defendant's) wife, it being one and the same transaction, the same was res gestae and the shooting of defendant's wife was admissible to show animus and motive.

**2.—Same—Evidence—Impeaching Witness—Bill of Exceptions.**

Where upon trial for murder defendant placed his wife on the witness Vol. 54 Crim.—27.

stand, there was no error in permitting State's counsel to cross-examine her for the purpose of laying a predicate to impeach her testimony, he in the mean time looking upon her written statement made before a justice of the peace, and asking her if she did not make the statements contained therein. Besides the bill of exceptions is defective in not setting out such statement.

### 3.—Same—Evidence—Insult to Female Relative.

Where upon trial for murder the defendant claimed insult to female relative, it was reversible error to reject testimony offered by the defense to show that the house in which defendant claimd he found deceased and defendant's wife, was a house of public prostitution. This was admissible to show good faith of defendant for believing that deceased and defendant's wife were unduly intimate.

### 4.—Same—Declaration and Acts of Defendant—Confession.

Under article 790 Code Criminal Procedure, as amended by the Act of the Thirtieth Legislature, page 219, it is necessary that the written confession of defendant must contain the statutory requisite that he had been warned by the person to whom the statement is made. This statute lays down a new rule of evidence and must be strictly complied with. See court's criticism on statute.

### 5.—Same—Charge of Court—Murder in Second Degree.

See opinion for charge on murder in second degree held to be correct and applicable to the facts, and in approved form.

### 6.—Same—Charge of Court—Manslaughter.

It is never correct or proper for a court in his charge to collate the facts; and an objection to a charge on manslaughter because it did not collate the facts will not be considered on appeal.

### 7.—Same—Charge of Court—Manslaughter.

Where upon trial for murder the evidence showed that the defendant had been laboring for sometime under the belief that the deceased had been unduly intimate with defendant's wife, but had not gone to the extent of wreaking vengeance on deceased, but thereafter deceased confirmed defendant's belief just before the homicide, the court in his charge on manslaughter should have pertinently and affirmatively instructed the jury on that phase of the case. Following Richardson v. State, 28 Texas Crim. Rep., 222, and other cases.

Appeal from the District Court of Red River. Tried below before the Hon. Ben. H. Denton.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Chambers & Black,* for appellant.—On question of rejecting testimony with reference to house of ill-repute on subject of adequate cause: McAnear v. State, 67 S. W. Rep., 119; Stanton v. State, 59 S. W. Rep., 272. On question of court's charge on manslaughter: cited cases in opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary.

Appellant and deceased were negroes, living in the same neighborhood in Red River County. From appellant's standpoint deceased became intimate with his, appellant's wife. He protested to the deceased in person against his attentions to his wife, and accused him on various occasions of being too intimate with her. He declared to various other parties that he was going to kill deceased on account of intimacy with his wife. On the morning of the homicide defendant informed his wife that he was going to take her back to her mother's on account of the intimacy of herself and the deceased. They started on this mission, and appellant's wife insisted that they should go by and get the deceased. They went where deceased was cutting wood, both of them calling to him. He finally came to where they were. A statement was made to him that they wanted him, deceased, to accompany them to a certain place in order to straighten-up some lies, as they expressed it, that had been told, alluding to remarks and statements about the illicit intercourse between appellant's wife and deceased. Deceased accompanied them for some little distance. Finally they sat down near a fence close to a farm belonging to appellant's father-in-law. It seems while sitting there they talked over the troubles above alluded to. Then appellant and his wife got over the fence, and the following conversation occurred between appellant and deceased, deceased remaining on the outside of the fence: "I says to John Aikin, deceased, does you want Sylvia? he says 'No.' I says, why it seems like you does. He says, 'She is your wife, haint she?' I says yes, she is my wife, but I am fixing to carry her home so you and her can associate if you want to; there haint no living for me and her to live together and you always picking at her; he says, 'No, I don't want her;' he says, 'Do you want to know the truth?' I says yes; he says, 'No, I don't want her, you asked me for the truth; he says 'Yes, I have had her and if I want her I can get her again.' That is just what he spoke. 'I don't want her, she is your wife and I don't want to interfere.' I says, you have done interfered with her; he says, 'Yes, I have interfered with her, but I don't want her.' He had his jumper on just like this, and a coat over his apron, and it seemed that he was making an attempt or commenced carrying his hand up with his jumper and all, and when he says, 'No, I don't want her,' why then I shot him. When I shot him he was standing about ten steps from the fence on the outside and I was standing on the inside of the fence in the field." After appellant shot deceased two or more times he fell and appellant then pursued his wife, the State's testimony showing that he was trying to kill her. His testimony showed that he was merely shooting to scare her or to make her stop. Appellant's wife ran up towards her mother's house. Her mother came out and met her, and over protest of the mother appellant shot his wife, he claiming, however, that the pistol was accidentally discharged and wounded his wife, from which

wound she recovered, and, the record shows, went back to live with appellant. There is other testimony in the record going to show divers meetings of appellant and deceased and threats on the part of appellant towards deceased on account of his improper relations with his wife, which we do not deem necessary to rehearse, but believe the above statement sufficient to discuss the assignments of error raised by appellant.

Bill of exceptions No. 2 complains of the court permitting the State to prove the fact of defendant shooting his wife after shooting deceased. Appellant objects to same on the ground that it is another transaction, and because it is prejudicial to the defendant and has no connection with this case, and is irrelevant and immaterial. This testimony was clearly part of the res gestae and was admissible to show animus, purpose and intent to illustrate the condition of defendant's mind and motive that was prompting him throughout the entire homicide.

Bill of exceptions No. 3 relates to the same matter.

Bill of exceptions No. 4 complains that the State was permitted to read from a written statement theretofore made by Sylvia Young, wife of defendant, before Squire Story, in the absence of the defendant, about the transaction, to which counsel for defendant objected, because said statement, if made, was not made in the presence of the defendant; because said witness is the wife of the defendant, and because neither the defendant nor his attorneys were present at the time said purported statement was made, was not confronted with said witness, and had no opportunity to cross-examine her, and asks that said statement be excluded from the jury. This bill is given with the explanation that, "The defendant placed his wife Sylvia Young on the stand and while the district attorney was cross-examining her, he asked her certain questions and at the time was looking on a paper and asking her if she did not make the statements. He was simply laying a predicate to impeach her upon the very questions about which she had testified for the defendant." Clearly, with this explanation, the testimony was admissible. However, the bill is defective, even without this explanation, for the reason it does not contain the statement and does not allude to any statement. We will not consult a statement of facts to make out a bill. In view, however, that this case will have to be tried again, we have examined the statement introduced and find that same is a legitimate cross-examination of appellant's wife, since the same shows that it has relation to nothing but what she had testified to, many statements in this statement being adverse and contrary to her testimony on the trial of this case.

Bill of exceptions No. 5 shows that appellant offered to prove by Wash Martin and Dave Beaty, that they and each of them lived in the neighborhood of Ida Little; that they knew the reputation of the house kept by said Ida Little, and that he expected to prove

by each of said witnesses that they knew the reputation of said house and that it was kept by the said Ida Little as a house of public prostitution, and by other witnesses that John Aikin, the deceased, and the wife of the defendant were there the night before the killing, together. State's counsel objected and the court sustained the objection. This testimony was admissible, since it is corroborative of the suspicions of appellant, and goes to show that he was acting in good faith and had reasonable basis for believing that deceased and his wife were unduly intimate. This is rendered doubly true, in view of the statement of facts which shows that appellant went to Ida Little's house and found his wife in company with deceased.

Bill of exceptions No. 6 shows that the State offered to read in evidence a statement purporting to have been made by the defendant; to which counsel for the defendant objected for the following reasons: Because said statement does not show that the same was voluntarily made, and it does not show that it was stated to the defendant that this evidence would be used against him and not for him, and the court overruled said objections. The court, in signing the bill, says, "The written statement was in accordance with the statute." Under the explanation of the court there was no error in admitting the statement, but we wish to call the court's attention, in view of another trial, to the peculiar phraseology of the statute authorizing the introduction of this character of testimony. Article 790, as amended by the Act of the Thirtieth Legislature, page 219, reads as follows, to wit: "The confession shall not be used if at the time it was made the defendant was in jail or other place of confinement, nor while he is in the custody of an officer, unless made in the voluntary statement of the accused taken before an examining court in accordance with law, or be made in writing and signed by him, which written statement shall show that he has been warned by the person to whom the same is made: First, that he does not have to make any statement at all. Second, that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is therein made, or unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed; provided that where the defendant is unable to write his name and sign the statement by making his mark, such statement shall not be admitted in evidence, unless it be witnessed by some person other than a peace officer, who shall sign the same as a witness." The statement found in the record starts off as follows: "Sam Young, after having been informed that he can not be compelled to make any statement whatever, and that if he does make any statement, same will be used as evidence in the case against

him for murdering John Aikin, and also in the case for shooting his wife, freely and voluntarily makes the following statement:" Then follows appellant's statement, which is signed "Sam Young" as indicated in the record. It will be noticed that that portion of the statement copied does not contain one of the requisites of a written confession as prescribed by the Act of the last Legislature, in that same does not show that he had been warned by the person to whom the same is made. This statute is in derogation of the former statute, and in the opinion of the writer a statute that ought never to have been passed, yet the same lays down a rule on the question of criminal evidence that becomes purely statutory, and in order to introduce the evidence it must comply strictly with the statute. The statement does not do so since the same does not show upon its face that he was warned by the person to whom the same was made. The evidence dehors the statement, perhaps, may do so, and probably does, but the Legislature, in its wisdom, has seen fit to say that a voluntary statement that does not contain this clause is inadmissible. We are impotent to change the law even if we were inclined to do so. The writer thinks the rule is too restrictive and ought to be repealed, but this is a matter left to the discretion of the Legislature.

Bill of exceptions No. 7 complains of the same matter discussed in bill of exceptions No. 4.

Appellant's amended motion for a new trial complains of the sixteenth paragraph of the court's charge, which is as follows: "If you believe from the evidence beyond a reasonable doubt, that the defendant, with his implied malice as that is hereinbefore explained, and with a deadly weapon or instrument reasonably calculated and likely to produce death by the mode and manner of its use in a passion, aroused with adequate cause, and not in defense of himself against an unlawful attack or demonstration reasonably producing a rational fear or expectation of death or serious bodily injury, with the intent to kill, did in Red River County, Texas, at any time prior to 28th day of November, 1907, unlawfully shoot and thereby kill John Aikin, as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment at confinement in the State penitentiary for any period that the jury may determine and state in their verdict, provided it be for not less than five years." Appellant complains that the charge is on the weight of the evidence and virtually charges the jury that the defendant had implied malice against the deceased when he shot him. The charge is correct, and has been frequently approved by this court.

The second ground of the motion complains of the following charge: "In determining whether or not there was adequate cause, you have the right to look to any or all provocations, if there were any, arising at the time or before the killing." Appellant complains that said charge should have gone further and charged

the jury that in considering the question as to whether appellant was guilty of the offense of manslaughter, they would consider all the antecedent provocations, enumerating them, in passing upon the question as to whether his mind was capable of cool reflection. In other words, the charge should have applied the principles of law to the facts proven and should have submitted to the jury the question as to whether or not, the course of conduct of the deceased toward defendant's wife, coupled with what occurred at the time of the killing, was an adequate cause to reduce the homicide to manslaughter. It is never correct nor proper for a court to collate the facts. The charge was correct as far as it went."

The fourth ground of the motion complains because the court's charge on manslaughter did not pertinently and affirmatively charge on that phase of the case wherein the facts show that deceased John Aikin, just before the shooting, asked defendant, Sam Young, if he wanted to know the truth, and defendant told him yes, when the deceased replied, "Well, then, I have had her and I can get her again if I want her," upon which the defendant shot and killed deceased. That the court should have charged the jury that if they believed that the defendant prior to the killing had suspected adulterous relations between deceased and his (defendant's) wife, but was not possessed of sufficient information to make his mind sure of that fact, and in order to satisfy his mind as to the truth or falsity of said act, on the morning of the killing he sought out the deceased to inquire as to the truth or falsity of said matter and that at said meeting with deceased, the deceased used the language above referred to, and if such language produced in the mind of defendant sudden rage, anger, passion or resentment, which rendered his mind incapable of cool reflection, and while in such state of mind, he shot and killed deceased, he would be guilty of no higher grade of culpable homicide than manslaughter. In the case of Richardson v. State, 28 Texas Crim. Rep., 222, in discussing a similar question to that raised by appellant, Chief Justice White of this court used the following language: "We are also of the opinion that the charge of the court failed and omitted pertinently and affirmatively to instruct the jury upon that phase of the law of manslaughter, which we have above indicated. Nowhere in the charge were the jury told what would be the law if defendant called deceased out or went out on invitation of deceased, and then asked him concerning the insulting language and deceased repeated the same in person to him, thereby offering a new insult." Then on page 221 we find the following: "If defendant asked the deceased out of the house for the purpose of ascertaining from him whether or not he had used the insulting language about his mother as he had been informed, and deceased, in reply to this question, stated that he had said and meant every word imputed to him, and the defendant, under the immediate influence of the sudden passion this insulting language aroused slew

him, he would only be guilty of manslaughter, provided the jury believed the passion was such as to inflame his mind so as to render it incapable of cool reflection." The record in this case shows that defendant had been laboring for a year or more under the belief that deceased had been unduly intimate with his wife, but had not gone to the extent of wreaking his vengeance upon him for said act, but certainly he had many bases for his suspicions as the record before us discloses, but when he had the same confirmed by the deceased's own declaration to him, he had absolute confirmation of his suspicions. Then, certainly if the jury believed the statement of this fact to him rendered the appellant's mind incapable of cool reflection, he would not be guilty of any higher offense than manslaughter. This phase of the law was not given in the main charge of the court. For authorities on this question see Tucker v. State, 50 S. W. Rep., 712; Bays v. State, 50 Texas Crim. Rep., 548; 99 S. W. Rep., 562; Williams v. State, 24 Texas Crim. App., 637; 7 S. W. Rep., 336; Pauline v. State, 1 S. W. Rep., 453; Maxwell v. State, 56 S. W. Rep., 62; Richardson v. State, 28 Texas Crim. App., 216; 12 S. W. Rep., 872, and Eanes v. State, 10 Texas Crim. App., 421.

For the error pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Ramsey, Judge, absent.