## SAM JENKINS v. THE STATE.

### No. 317. Decided February 16, 1910.

Rehearing Denied November 9, 1910.

**1.—Rape—Written Confession—Warning—Person to whom Made.**

Upon the trial of rape, where the written confessions of defendant which were introduced in evidence by the State failed to state in the body thereof that the confessions were made to the person by whom the warning had been given that such statement might be used in evidence against the defendant on the trial for the offense concerning which the confessions were therein made, the same were inadmissible in evidence and their admission was reversible error. Following Robertson v. State, 54 Texas Crim. Rep., 21; Young v. State, id., 417. Overruling Knight v. State, 55 Texas Crim. Rep., 243; Knuckles v. State, id., 6; Ramsey, Judge, dissenting.

**2.—Same—Policy of the Legislature—Proof dehors the Record.**

The evil the Legislature intended to cure was that confessions had been extracted illegitimately, and that therefore the confession must be made in writing to the party giving the warning, and that these matters must be stated in the body of the written confessions and can not be proved dehors the record.

**3.—Same—Evidence—Nymphomania—General Reputation—Query.**

Where, upon trial of rape, the defendant contended that the prosecutrix was laboring under the disease of nymphomania, and that if her mother and blood relations were people of inordinate sexual passions that it would predispose the prosecutrix to this disease of nymphomania, he could not establish this fact by the general reputation of said blood relatives, and the court below did not err in refusing to permit him to do so. Whether the fact of such predisposition could be proved at all as contended is not decided.

**4.—Same—Charge of Court—Nymphomaniac—Mental Competence of Witness.**

Where, upon trial of rape, the defendant claimed that the prosecutrix was a nymphomaniac, and the court submitted the issue of mental incapacity of the witness in a proper charge, and required the jury to find that the defendant must establish the mental incapacity of the witness by a preponderance of evidence that the witness was so incapacitated at the time she testified, there was no reversible error. Following Tubb v. State, 55 Texas Crim. Rep., 606.

**5.—Same—Limiting Argument of Counsel—Discretion of Court—Practice.**

Upon trial of rape, where the court limited the argument of defendant's counsel to one hour, the same is not under the discretion of the court reversible error; but where the issue is a novel one as in this case it is suggested that sufficient time be given to defendant's counsel in which to present the case to the jury; as in all capital cases ample opportunity and time for such arguments should be given.

**6.—Same—Evidence—Marriage.**

Upon trial of rape, evidence that the defendant was a married man should not have been admitted.

Appeal from the District Court of Erath. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of rape on a female under age; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*M. J. Thompson* and *J. A. Johnson,* for appellant.—On question of admitting in evidence the written confessions of defendant: Gas-

ton v. State, 55 Texas Crim. Rep., 270, 116 S. W. Rep., 582, and cases cited in majority opinion.

On question of admitting oral testimony in support of defendant's written confessions: Smith v. State, 68 S. W. Rep., 995, 44 Texas Crim. Rep., 137; Smith v. State, 73 S. W. Rep., 401; Smith v. State, 74 S. W. Rep., 556; Stripling v. State, 47 Texas Crim. Rep., 117, 80 S. W. Rep., 376.

On question of mental incompetency of prosecutrix from nympho-mania: Lovelady v. State, 14 Texas Crim. App., 545.

*John A. Mobley*, Assistant Attorney-General, for the State.—On the question of written confessions of defendant: Cases cited in minority opinion.

The common law rule that penal statutes will be strictly construed is not the rule in Texas and such rule is abrogated by article 25, Code Criminal Procedure: Road v. State, 30 Texas, 503; Ex parte Gregory, 20 Texas Crim. App., 210; Murray v. State, 21 Texas Crim. App., 620; Ex parte Garza, 28 Texas Crim. App., 381.

McCORD, JUDGE.—A verdict of ten years resulted from the trial of appellant, Sam Jenkins, in the court below on a charge of rape upon a female under the age of consent. In the trial of the case in the court below the State, over the objection of the appellant, offered in evidence what purports to be a written confession of the appellant as follows: "I, Sam Jenkins, have been duly warned by the county attorney, L. O. Cox, that any statement that I might make could be used in evidence against me on a trial, and not for me, and that I do not have to make any statement, make the following statement:

"I am twenty-two years old; I know Eunice Williams, or rather Eunice Hudspeth; I have known her about two and a half years. I would judge her to be about fifteen years old. I was at the Williams house Tuesday night; there was a game of Forty-two there. While the rest of them were playing Forty-two Eunice was playing the graphophone; I was listening and she and I were talking, and while we were talking she agreed to meet me that night and have intercourse with me after the game was over and we were ready to go home. Louis Bounds and I went down in the field, and I told him to wait for me, and I went back and stopped at the cotton seed house, and in a few minutes Eunice came out to where I was, with one stocking on and one off, and a dark colored loose fitting dress on. She laid down on the ground at the northwest corner of the cotton seed house and I had intercourse with her. I penetrated her with my male organ, and did not have any trouble in entering her. I was there about twenty minutes, and we completed the act of intercourse before I left.

"(Signed) Sam Jenkins."

This was objected to on the ground that the defendant was under arrest and in the custody of the sheriff at the time the statement was made; that said statement fails to show that it was made to the person who warned the defendant and that said statement fails to set forth that the same could be used against the defendant in a trial for the offense for which the confession was therein made. We think that these objections were well taken and that the court below erred in admitting the testimony. It is not necessary to write extendedly upon this subject. We think the cases of Robertson v. State, 54 Texas Crim. Rep., 621, and Young v. State, same volume, p. 417, decisive of the question. In both of those cases the written confessions offered in evidence omitted to state that the confession was made to the person who gave the warning. This is one of the prerequisites of the statute, the statute requiring that the written statement shall show that he has been warned by the person to whom the same is made, and must show that it may be used in evidence against him on the trial for the offense concerning which the confession is therein made. The confession in this case fails to state that it was made to the person by whom the warning had been given, and, second, it says on the trial, but does not state that such statement may be used in evidence against the defendant on trial for the offense concerning which the confession is therein made. There is nothing in the confession about any offense with which the defendant was charged. As said by this court in Robertson v. State, supra, "We think, undoubtedly, that this instrument was not admissible as a confession in view of the provision of our Code of Criminal Procedure as same now stands. Whatever may be thought of the wisdom of the Act of the last Legislature in respect to confessions; it is certain that the Legislature intended that before any confession of one in jail or in confinement should be admitted, that such instrument should contain, within itself, evidence that the person making same had been warned by the person to whom same was made; that he did not have to make any statement at all, and that any statement so made could be used in evidence against him on his trial for the offense concerning which the confession is therein made. The fact that such statement is contained in the certificate of the notary public does not meet the requirements in the statute. It can no more supply the recital of such fact in the statement than could an acknowledgment supply or take the place of a substantial matter required by law to be contained, or included in a deed or other instrument of writing." And this doctrine was reaffirmed in Young v. State, same volume. We therefore hold that the written confession was not such an instrument as, in the shape it is in, could be introduced in evidence and that it failed to comply with the terms of article 790 of the Code of Criminal Procedure, as amended by the Act of the Thirtieth Legislature; and that the court below erred in admitting said confession.

On the trial of this case the · prosecutrix took the stand and testified that she was about thirteen years old; that she had voluntarily entered into the act of intercourse with the appellant; that she had been doing such things ever since she was nine years of age, and that she had copulated with a great many persons—boys in the neighborhood—giving the names of several. She was examined by physicians and these physicians testified on the stand that she was a well matured girl and well developed; that her private parts showed that she had ·been entered and that such entrance had been so frequent ·and of such long standing ·as showed a full development of those ·parts, and that she could have intercourse with a man without trouble or pain. The contention of the appellant was that the prosecuting witness, Eunice Hudspeth, was a nymphomaniac; that she had all the symptoms of a nymphomaniac. These physicians stated what these different indications of nymphomania were, and that a woman suffering from nymphomania would conceive in her mind ·a fact, and that she would go into court or anywhere and testify and assert that a certain individual had copulated with her when such would not ·be the fact. That it was necessary in order that the physician could be able to make a proper diagnosis of nymphomania in this girl to know her ancestry—her mother and blood female relatives—and that if her blood female relatives were people of lewd character and wanting in: chastity and of strong passions along this line, this would predispose the girl or offspring to have the disease of nymphomania. The appellant then offered to prove by the witnesses Ed Wynne and L. H. Bramblett that the reputation of the mother of prosecutrix and the reputation of the sister of the prosecutrix was bad for chastity; that said witnesses would have testified, had they been permitted so to do by the court, that the reputation of the prosecutrix' mother and sister was bad for chastity. The court refused to permit such testimony to go before the jury and in his qualification to the bill stated that same was refused because the appellant's expert, Dr. Sturgis, in response to interrogatories put by the court, stated that the general reputation of the prosecutrix' mother ·and sister for chastity, if bad, would throw no light on whether or not said prosecutrix had nymphomania, and said physician, together with Drs. Gordon and O'Brien, at the time of this trial, and after he had been placed on the stand and testified in part, at the instance of the court, made a physical and mental examination of prosecutrix, and each swore she was sound mentally and physically and had no nymphomania. However, Dr. Gordon, Dr. Underwood and Dr. Greenwood all swore that the symptoms of this girl indicated that she had that disease, and that if her ancestors were lewd, that it would show a predisposition on her part to have said disease.

We are unable to agree with the contention of appellant that the reputation of the mother ·and sisters of the prosecutrix would throw any light upon the issues involved in this case. As we· understand,

reputation is one thing and the facts another. A person may have a reputation for a thing, but that would not establish the existence of the fact. Here the appellant was contending that the prosecutrix was laboring under the disease of nymphomania, and that if her mother and blood relations were people of inordinate passions, that it would predispose the prosecutrix to this disease of nymphomania. This question will be decided by the court when it is presented in proper form. We hold, however, that that can not be established by the general reputation of the blood relatives in the ascending line, and that the court below did not err in refusing to permit appellant to prove the general reputation for chastity of the mother and sisters of the prosecutrix, and that the same could throw no light upon the issue before the court.

3. Complaint is also made of the charge of the court wherein the issue was submitted to the jury on the subject of nymphomania, which charge is as follows: "Now, if you believe and find from the preponderance of the evidence in this case that Eunice Hudspeth, on the 23d day of March, 1909, or at the time she testified in this cause, was laboring under such a defect of reason from nymphomania or other disease of the mind, and under such derangement of the mind as to render her incapable of receiving a sound mental impression, of the transaction regarding which she testified, or if you believe that she had the capacity to receive such mental impression as would render it impossible for her to retain and impart such impression correctly; or if she is laboring under such defect of reason from disease and derangement of the mind as would render it impossible for her to know and understand the nature and obligation of an oath, then in law she would not be a competent witness, and if you should so find, you will disregard her testimony altogether and not consider it for any purpose in this record.

"If, on the other hand, gentlemen, the defendant has not established by a preponderance of the testimony that she was laboring under a diseased condition of the mind caused from nymphomania or some other disease on the 23d day of March, 1909, and if he has failed to establish by a preponderance of the testimony that she was at the time she gave evidence in this case laboring under a disease of the mind that rendered her incompetent to testify, as set out in the last preceding paragraph of this charge, then you are instructed that you may consider her testimony in passing on the guilt or innocence of the defendant, you being the judge exclusively of the weight to be given to her testimony and the credibility of her as a witness."

We do not think this charge is subject to the objection of counsel for appellant, but think the charge is correct and follows the rule laid down in the case of Tubb v. State, 55 Texas Crim. Rep., 606.

4. Complaint is also made by bill of exceptions that the court only allowed appellant's counsel an hour for the discussion of the

case before the jury, and that this was not sufficient time to present the case fairly and intelligently to the jury. The court qualifies this bill by stating the defendant lacked a few minutes of consuming the hour given by the court for a discussion of the facts before the jury. We would not feel justified in reversing the case for this reason. We would, however, suggest that in capital cases sufficient time should always be given for a free and large discussion of the facts. Our statute, article 705, Code of Criminal Procedure, provides: "In prosecutions for felony the court shall never restrict the argument to a less number of addresses than two on each side." The bill of exceptions shows that appellant had several counsel defending him, more than two. The statute puts no limit to the time that shall be occupied by counsel in the argument of a case, and in the trial of a case where the whole argument is left by statute to the regulation of the presiding judge, this court would never be warranted in reversing a case because the court below placed a limitation upon the argument, unless it manifestly appeared that injury resulted to the appellant by such limitation. This court held in the case of Walker v. State, 32 Texas Crim. Rep., 175, that on a trial for theft, where more than twelve witnesses had testified and the issues were strongly contested, and the evidence mainly circumstantial, it was error for the court to limit the argument to forty-five minutes. We would suggest, therefore, that trial judges should not unduly limit counsel in their arguments, and that in all cases involving capital punishment it is the better practice to allow counsel ample opportunity to present the questions fairly, thoroughly and fully before the jury. Where the issues made in the court below were somewhat of a novel character, as is shown in this record, we are of opinion that an hour would not be sufficient time in which to present the case to the jury. However, we do not consider this a ground for reversal in this case.

5. It has been held by this court that it was error to allow the State to prove, in a rape case, that defendant was a married man. We suggest, on another trial, this fact be not admitted.

For the error pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

RAMSEY, JUDGE (dissenting).—The adage is as true, as old, that hard cases make bad law. In my judgment the opinion of the majority in this case is a fresh confirmation of the truth of the old saying. The record before us discloses a condition of depravity difficult to believe and impossible to state without burdening our pages with a condition of affairs that, with becoming respect, we can not afford to do. But the question in the case is a thing apart from the character, habits or antecedents of the young girl, the subject

of the assault. If the opinion of the court is bad law in this case, it would be equally bad in a case where we would be less reluctant than here to apply the correct rule. The matter of the introduction of the confession copied in the opinion arose in this way: The State introduced L. O. Cox for the purpose of proving the execution of the instrument by appellant, who, under the direction of the court, was permitted to testify and did testify as follows:

"I am county attorney of Erath County. After the defendant had been arrested and placed in jail, I had him brought out to the office of the justice of the peace, in the courthouse, for the purpose of ascertaining whether he wanted an examining trial, or to waive a trial, and for the purpose of fixing his bond, or having the bond fixed for him. He waived an examining trial on the charge and I then warned him officially that he did not have to make any written statement of the matters connected with the offense with which he was charged, and warned him also that if he did make any statement in the matter it could be used in evidence against him, and not for him, on a trial. After this warning I then asked him if he desired to make a statement. He said he did, and then proceeded to make a statement of the matter, which I reduced to writing in his presence, and which I afterwards read over to him in the presence of the justice of the peace and also the sheriff, or perhaps one of the deputy sheriffs. Defendant then signed the statement also in the presence of the justice and sheriff." Thereupon the confession, which is the principal subject of discussion, was offered in evidence and objected to. To insure entire accuracy we copy the precise objections set out in the bill. They are as follows: "To which testimony of the witness Cox, the defendant at the time that the same was offered objected to same on the ground that defendant was under arrest and that what he said and did while under arrest can not be used against him unless in writing, and the statutory requisites complied with, and that parol evidence is not admissible to supply any defect or omission in said written statement. And that the statute requires the confession of a defendant under arrest to be in writing, and that the written statement must show that the defendant was warned by the person to whom the same is made, and such an omission can not be supplied by parol testimony, and that the said testimony is irrelevant and immaterial and prejudicial to the rights of the defendant before the jury." The bill also recites and the court certifies that at the time appellant made said statement, that he was under arrest and that such statement bore no date.

Article 790 of our Code of Criminal Procedure, as amended by the Acts of the Thirtieth Legislature, p. 219, is as follows: "The confession shall not be used if at the time it was made the defendant was in jail or other place of confinement, nor while he is in the custody of an officer, unless made in the voluntary statement of the

accused, taken before an examining court in accordance with law, or be made in writing and signed by him, which written statement shall show that he has been warned by the person to whom the same is made: First, that he does not have to make any statement at all; second, that any statement made may be used in evidence against him on trial for the offense concerning which the confession is therein made."

The question is, whether or not, fairly construed, in the light of the testimony, admissible in aid of the written statement, same conforms to and is brought fairly within the terms of the statute. In order to determine this question, it is well to consider the purposes and objects of the statute. Before this Act was passed, admissions or confessions by parol were frequent where a preliminary examination disclosed that the warning required by law had been given. It was no doubt believed by the Legislature that this rule was attended with frequent abuses, and that many times unsuspecting and innocent persons were entrapped into statements unadvisedly, and without knowledge of their rights under the law, and without thought that such statements would confront them on their trial. It was no doubt believed that by corrupt or overzealous officers, not infrequently by importunity, coercion, craft and doubtless sometimes by the application of the third degree, as that term is understood in police circles, weak, untrained and often innocent persons were led into statements which would not have been made under fair conditions or with knowledge of the fearful consequences thereof, and that sometimes, too, warnings were claimed to have been given when in fact they were either not given at all or were so guardedly given or in such vague and general language as not really to apprise persons under arrest of their import and effect. It was, therefore, no doubt designed by the Legislature that hereafter, with a view of discouraging practices and abuses which had crept into the administration of justice, that a new rule would be instituted, which would be for the better protection of defendants, but which would at the same time be available and of service to the Commonwealth in the prosecution of offenses. Therefore, doubtless based on these and other reasons, they enacted this law. When construed in its entirety it does this and no more than this. It provides before such confession can be admitted in evidence that it shall recite and contain intrinsic evidence of the legal rights of the person charged with the offense, first, that he does not have to make any statement at all; in other words, that his failure to do so was not a circumstance against him; that the law protected his silence; that he might stand upon his rights and decline to make any statement whatever. This covers the first provision "that he does not have to make any statement at all." The second provision is based on this reason: It is designed to inform him that any statement that he does make may be used in evidence against him on his trial for the offense with

which he is charged. In other words, that provision is intended to advise and put him upon notice that the statement he makes is not to secure immunity, not for the private information of the person to whom made, not to secure him against prosecution, but to advise him distinctly that it may be used against him on the trial, and will or may appear in judgment against him. The reason for requiring the name of the person giving the warning to be stated therein is not so obvious. I think, however, that the underlying reason inducing and requiring such name to be stated was with a view of furnishing ready and certain information to persons charged with crime of the name of the person by whom the warning was claimed to have been given. In the absence of such person being named, litigants would be wholly at a loss to know on whose testimony the State would rely to establish this important fact, and in the absence of such knowledge surprises would not only be frequent, but sometimes would or might place an innocent defendant at such disadvantage as to make it impossible for him to meet the proof of the State. If, however, the confession be in writing and the name of the person is therein stated, it will always be practicable, on due application, for the defendant to secure an inspection of such instrument, and know in advance of the trial the name of the person by whom the warning was claimed to have been given, and, therefore, be able on trial to meet the State's proof in respect to such warning. It was never designed, however, I think, by the Legislature that any peculiar form or formula should be held necessary to convey to a defendant this information, and while it is always preferable to use the language of a statute when drawing any instrument under it, it would be an unsafe rule to hold that the mere absence of any particular word used in the statute where other language is substituted therefor of the same import would of necessity invalidate same. It should always be remembered, too, that it must have been contemplated by the law-makers and understood by them, that in the administration of the law many persons, who were not lawyers and were not skilled in or conversant with the technical rules of the law, would be employed in the detection of crime, and would be concerned in attesting confessions, and it is hardly probable that the Legislature could have intended that this law, in its practical administration, be administered by trained lawyers conversant with the niceties of expression, or the technicalities of men trained to the legal profession, but that the law would be administered and construed in a plain, everyday, straightforward fashion. Whether the statute should be strictly construed, as Judge Brooks says in the case of Young v. State, 54 Texas Crim. Rep., 417, supra, I am not disposed to quarrel. After all, whether strictly or liberally construed, the supreme test always is to give it a fair and reasonable construction so as to arrive at the true intent and purpose of the law. My opinion is that the statement here offered comes within

the true intent and meaning of the law, and to hold otherwise is, with all due respect to the majority, sheer literalism gone to seed. Nor, as I believe, do the cases cited sustain the opinion of the majority. I wrote the opinion in the case of Robertson v. State, 54 Texas Crim. Rep., 21. It was the first opinion rendered by this court on this statute, so far as I now recall. In that case, as an inspection of the opinion will show, the confession offered in evidence contained *no* recital at all either in *terms* or *substance* that Robertson had been warned either that he did not have to make any statement at all, or that his statement might be used in evidence against him. These recitals were contained, however, in the certificate of a notary public, and we held in the Robertson case that the instrument itself must contain the statutory essentials, and their absence from the confession was not cured by their appearance in the acknowledgment to same. We there say: "The fact that such statement is contained in the certificate of the notary public does not meet the requirements in the statute. It can no more supply the recital of such fact in the statement than could an acknowledgment supply or take the place of a substantial matter required by law to be contained, or included in a deed or other instrument of writing." That was the only point decided so far as it involves this question in Robertson v. State, supra.

Nor, as I believe, is the conclusion of the majority supported by the case of Young v. State, 54 Texas Crim. Rep., 417. Judge Brooks wrote the opinion of the court in that case, and with a perfect understanding of its holdings I agreed to it. Among the conspicuous traits of that great judge was directness and slight respect for the less "weightier matters of the law." The confession considered in that case is as follows: "Sam Young, after having been informed that he can not be compelled to make any statement whatever, and that if he does make any statement, same will be used as evidence in the case against him for murdering John Aikin, and also in the case for shooting his wife, freely and voluntarily makes the following statement:" It will be noticed, therefore, that in this statement there is the name of *no person* mentioned in it at all as having given him the warning required by law. We held, therefore, in the absence of any sort of designation of the person giving the warning, and in the *complete absence* of any name of any person in the statement by whom the warning was given, that it did not conform to and comply with the statute. That is the only question decided in that case. What are the facts here? The statement recites: "I, Sam Jenkins, have been duly warned by the county attorney, L. O. Cox, that any statement that I might make could be used in evidence against me on a trial, and not for me, and that I do not have to make any statement, make the following statement:" Now, of course, in practically every case it would be essential to place some witness on the stand to prove up the execution of any

statement to be offered. This is a condition precedent that would be necessary in every case. Now, then, what have we? We have a reputable man placed on the witness stand who identifies the instrument offered, vouches for its integrity and proves its execution. In connection with his testimony, the instrument is offered. The instrument so offered recites that he was warned by the person producing the instrument, identifying the instrument, and proving the execution of the instrument. The law says: "Which written statement shall show that he has been warned by the person to whom the same is made." To whom was this confession made? To L. O. Cox. By whom was he warned? He was warned by L. O. Cox. If the contention of the majority is correct, and in support of this provision of the law, we would say, "I, Sam Jenkins, having been duly warned by the county attorney, L. O. Cox, he being the person to whom this statement is made," etc., but the law does not require the confession to state in terms that the person named therein *is* the person by whom the warning has been given, but is only required to name in the statement that he had been warned by the person to whom such confession is made and does not require the further statement that he is the person. It would be as useless if a great artist should paint a picture of full, ripe grapes, blushing purple in the sunlight, and so real that birds would stop in their flight to peck at them, could not have his work considered or hung in an art gallary unless he should painfully and laboriously trace under it, "This is a picture of grapes."

Some suggestion further was made in the argument that the statement was deficient in that it did not in terms recite that same might be used against appellant on the trial of this particular case. We think this objection is exceedingly technical, and in its last analysis unsound. That there might be confessions so complicated and involving so many issues and questions as to make this objection is possible, but we are dealing here with this particular case, and, as a court of last resort, are presumed to be dealing with realities and not basing our conclusion upon artificial and technical rules, resting on no rational principle. The confession bears intrinsic evidence of the fact that it relates to no other transaction except the one made the basis of this charge, and it is inconceivable, in view of the character of the confession, that it could be assumed by anyone, that the warning that it could be used against him on his trial, could have referred to any other trial than the one involving this transaction. In this case there was no suspicion thrown on the entire and absolute good faith of the officer taking the confession. Its execution stands undenied; there is no suspicion that it is otherwise than as read, understood and signed by appellant, nor is there any other fact that in anywise impeaches its truthfulness and integrity. In view of these facts, and for the reasons here given, I am unwilling to lend my endorsement to a rule which I believe, if followed,

and if it shall form the precedent for such highly technical, if not indeed strange and unusual, construction, would utterly emasculate the whole confession law in this State, and I have deemed the matter of such importance as to write out my views at this length.

ON REHEARING.

November 9, 1910.

McCORD, JUDGE.—On the 16th day of February, 1910, this case was reversed, Judge Ramsey dissenting. The State filed a motion for rehearing, asking that the judgment reversing the case be set aside, and the case affirmed, alleging that the majority opinion was erroneous in holding that the court below improperly admitted the confessions of the defendant. At first we were inclined to overrule this motion without a written opinion, but since the very vigorous dissenting opinion of Judge Ramsey we have thought best to further emphasize what we have already written in this case.

At the time the original opinion was written our attention had not been called to the cases of Knight v. State, 55 Texas Crim. Rep., 243, and Knuckles v. State, id., 6. If the Knight case and the Knuckles case are to be the law of this State, and to be followed as the rule of this court, then the Robertson case, 54 Texas Crim. Rep., 21, and the Young case, 54 Texas Crim. Rep., 417, reported in the 54 Texas Crim. Reports, must be overruled. But after a careful review of these different decisions we believe the rule announced in the Robertson and Young cases is correct and should be followed, and wherein the Knight case and the Knuckles case announces a contrary doctrine, that this should be overruled. In the Robertson case, 54 Texas Crim. Rep., 21, the judgment was reversed solely upon the ground that the purported written confession of the defendant was erroneously admitted as testimony, because it did not comply with the law in regard to introducing confessions of the defendant. Judge Ramsey, delivering the opinion of the court, says: "Whatever may be thought of the wisdom of the Act of the last Legislature in respect to confessions, it is certain that the Legislature intended that before any confession of one in jail, or in confinement, should be admitted, that such instrument should contain, within itself, evidence that the person making same had been warned by the person to whom same was made that he did not have to make any statement at all, and that any statement so made could be used in evidence against him on his trial for the offense concerning which the confession is therein made. The fact that such statement is contained in the certificate of the notary public does not meet the requirements in the statute. It can no more supply the recital of such fact in the statement than could an acknowledgment supply or take the place of a substantial matter required by law to be contained, or included in a deed or other instrument of writing."

In the Young case, decided by Judge Brooks, 54 Texas Crim. Rep., 417, he says: "It will be noticed that that portion of the statement copied does not contain one of the requisites of a written confession as prescribed by the Act of the last Legislature, in that same does not show that he had been warned by the person to whom the same is made. This statute is in derogation of the former statute, and in the opinion of the writer a statute that ought never to have been passed, yet the same lays down a rule on the question of criminal evidence that becomes purely statutory, and in order to introduce the evidence it must comply strictly with the statute. The statement does not do so since the same does not show upon its face that he was warned by the person to whom the same was made. The evidence dehors the statement, perhaps, may do so, and probably does, but the Legislature, in its wisdom, has seen fit to say that a voluntary statement that does not contain this clause is inadmissible. We are impotent to change the law even if we were inclined to do so. The writer thinks the rule is too restrictive and ought to be repealed, but this is a matter left to the discretion of the Legislature." This is one of the principal grounds for the reversal of the Young case.

Judge Brooks wrote the opinion in the case of Knight v. State, 55 Texas Crim. Rep., 243, and that case was reversed upon several grounds. One of the exceptions in that case was to the action of the court in permitting the State to offer in evidence the written confession of the defendant, on the ground that the statement did not show that the defendant had been warned by the party to whom the confession was made. Judge Brooks disposed of the question in this language: "We see no objection to the statement. It comports in all respects with the statute prescribed with reference to written confessions of defendants in jail." Yet, however, the court further says: "However, in view of the fact that appellant swears that a warning was not given and a hope of reward was offered, the court, in charging the jury, should have told them not to consider said statement if they believed any inducement was held out or hope of reward offered at the time the statement was made." This opinion is in direct conflict with the Young opinion in the 54 Texas Crim. Report, decided by the same judge; and in the summary manner in which Judge Brooks disposes of the question, we think that he had not given to it that consideration that he gave to the other questions in the case. The record in the Knight case was very voluminous. The opinion of Judge Brooks is a very lengthy opinion, and he had to consider some thirty bills of exception in connection with the case. And where the case had to be reversed upon other numerous points, we do not think that the mere statement of the court in that case, that the confession seems to comply with the law,, will stand in the face of the emphatic declaration of the same judge in the Young case, supra, in which he states that the written confession in itself must state that the warning was given by the party to whom the

confession was made. And that evidently Judge Brooks' attention had not been called to the opinion he had rendered in the Young case, for either the Young case is right, and the Knight case is wrong, or the Knight case is right, and the Young case wrong. Judge Brooks also rendered the opinion in the Knuckles case, reported in 55 Texas Crim. Rep., 6. From an inspection of the opinion in that case it is not made clear that the objection was made to the confession on the ground that the warning had not been given by the person to whom the confession was made. Judge Brooks disposes of this question as follows: "Appellant objected to the introduction of this confession on the ground that the same was not properly authenticated; that the requirements of the statute that the offense with which the defendant was charged at the time of his arrest should be therein stated, and as the charge at the time of his arrest could be identified with the one concerning which the confession was made and for which he was tried; and that the warning required by the statute is not properly set out in the said statement or confession. We do not think any of these objections are well taken or correct. . . . The old statute in reference to confession, merely required a proper warning; then any statement, either oral or written, after said warning, that appellant might make, would have been admissible in evidence against him. The last Legislature, however, saw fit to provide that no confession, however clear the warning, should be admitted unless the same was in writing and properly sworn to. It provides that said written statement must contain certain requisites, *but the suggestion here made by appellant is not one of those requisites.*" Why was it that Judge Brooks overlooked the opinions in the Young and Robertson cases in the 54 Texas Crim. Reports we are not advised. Neither of these cases is cited in the Knuckles or Knight case. The Knuckles case does not make it clearly appear that the objection to the confession was that it did not show that the confession was made to the party who gave the warning. In this case Judge Brooks does not refer to the Young and Robertson cases; and it is strange that he does not refer to his language in the Young case, for in the Young case he says: "The evidence dehors the statement, perhaps, may do so (that is, that the confession was received by the party who gave the warning), and probably does, but the Legislature, in its wisdom, has seen fit to say that a voluntary statement that does not contain this clause is inadmissible." We are of opinion that the Knuckles case does not distinctly raise the point, and that the Knight case, while the point was raised, the case was reversed for several other reasons, and the matter was decided without reference to the Young case that had already been decided by Judge Brooks.

We are clearly of opinion that we were right in the original opinion in this case, and if we can do away with this requirement of the statute with regard to confessions, we can, with like pro-

priety, do away with any other requirement of the statute with regard to confessions, and finally and eventually, by process of elimination, destroy entirely the statute. If proof of this fact can be made dehors the record, can not the proof that the warning was given be proven dehors the record or by oral testimony? We may ask, why did the Legislature pass this Act? What was the evil intended to be cured? The belief had become prevalent, that confessions had been extracted from defendants by various means; in fact, by the use of force and violence men were compelled to make statements, and then parties would go into court and swear that they had been properly warned. Again, this court has held in a number of cases that one party might give the warning and another party receive the confession. This line of authorities had never been accepted by the profession as just and reasonable. And under the cover of that line of authorities parties have been arrested, and by the application of the third degree, warnings have been given with threats of violence, and then the party who gave the warning and inflicted the violence would retire, and another party receive the confession, and this was done in such manner as could not be brought to the attention of the courts. For this reason we think that the Legislature, in its wisdom, saw fit to provide that no confession should be received unless the same was in writing, and that this writing should show that the confession was made to the party who gave the warning. It, to our minds, was a wise and wholesome provision, and without it the statute would have been worthless, and why say that this proof can be made orally? What answer can be made to the statute upon the subject? It is emphatic in its terms, and where can the court get its authority to do away with this requirement? The court would have the same power to do away with any other requirement of the statute if this omission can be justified by the courts. We have great respect for the learning and ability of Judge Ramsey, and regret that there should be a disagreement between us upon this subject. However, our own sense of duty as well as our conscience compel us to declare the law as we find it and as it has been written by the Legislature. If the law contained language that was susceptible of two constructions, we might be authorized to give such a construction as might uphold a conviction had in any given case, but the law must be observed as we find it, and if the people are not satisfied with the law that they have passed, then such law must be repealed by the constituted authorities, as no right exists in the courts to repeal the law.

Believing profoundly and conscientiously that we are right in the views that we here have expressed, we are clearly of opinion that the Knight case and the Knuckles case in the 55 Texas Criminal Report, 6, insofar as they conflict with the rule laid down in the Robertson and Young cases, in the 54 Texas Crim. Report, 417, and as expressed herein, should be and the same are hereby overruled.

The State's motion for rehearing will therefore be denied.

*Overruled.*

RAMSEY, JUDGE (dissenting).—The judgment in this case was by this court reversed in an opinion delivered by Judge McCord on the 16th day of February of this year. At the time I filed a dissenting opinion, in which I gave at some length the reasons on which my dissent was based. In the original opinion delivered in the case the court rested its conclusion that the confession was inadmissible upon the authority of Robertson v. State, 54 Texas Crim. Rep., 21, and Young v. State, 54 Texas Crim. Rep., 417. On a fuller examination I find that the identical question here presented, practically word for word, was held in accordance with my views in the cases of Knight v. State, 55 Texas Crim. Rep., 243, and Knuckles v. State, 55 Texas Crim. Rep., 6. With a view of demonstrating the correctness of this view I here place so much of the confession as is suggested in parallel columns:

"I, Sam Jenkins, have been duly warned by the county attorney, L. O. Cox, that any statement that I might make could be used in evidence against me on a trial, and not for me, and that I do not have to make any statement, make the following statement:

"I, Demps Knuckles, having been duly warned by Officer Fred Rexer that I do not have to make any statement at all, and that any statement made by me may be used in evidence against me on my trial for the offense concerning which this confession is made, say (Knuckles v. State):

"The above and foregoing statement is made by me, after having been warned by Virgil R. Parker, assistant county attorney of Tarrant County, that I did not have to make any statement at all; that any statement made by me would be used against me in the trial of my cases wherein I am charged with the murder of Ed Larmon, in North Fort Worth, Texas, on the 11th day of April, 1908, and also in cases wherein I am charged with having committed the offense of assault on the persons of O. R. Montgomery and R. D. Howell and Azalle Krause, in North Fort Worth, Texas, on the same date." (Knight v. State.)

In this connection it should be further stated that the objections made in the Knuckles case were perhaps more fully and elaborately presented than the objections made in this case. This will be demonstrated by the following statement taken from the Knuckles opinion:

"Appellant objected to the introduction of this confession on the ground that the same was not properly authenticated; that the requirements of the statute that the offense with which the defendant was charged at the time of his arrest should be therein stated, and as the charge at the time of his arrest could be identified with the one concerning which the confession was made and for which he was tried; and that the warning required by the statute is not properly set out in the said statement or confession."

A very full objection was made to the confession in the Knight case. In disposing of the objection interposed in the case of Knuckles, supra, Judge Brooks disposes of the matter thus summarily: "We do not think any of these objections are well taken or correct." In discussing the confession in the Knight case he says: "We see no objection to the statement. It comports in all respects with the statute prescribed with reference to written confessions of defendants in jail." These opinions were delivered, the first on December 9, 1908, and in the Knight case, on February 5, 1909. It may seem strange that none of us, when the matter was originally before us, remembered or recalled these opinions. I can only account for it on the ground that the objections seemed so insubstantial and of such little merit as not to provoke discussion or to arrest attention. In any event, while my failure to recall the decisions may be a reflection on my memory, I find some consolation in the fact that on principle I had followed them and that my judgment was not at fault. After all I have said, it does not need to be again repeated that the opinion of the majority strikes me not only as highly technical and erroneous, but exceedingly hurtful. In construing this, as any other statute, it is a rule of universal prevalence that we should have in mind the old law and the mischief sought to be remedied thereby. These considerations as well as the words of the statute provided should be taken into account in construing a provision of such statute. State v. Smith, 13 Kan., 274. Such statute is to be so construed as to suppress the mischief, advance the remedy and suppress all evasions for a continuance of the mischief. State v. Clarke, 33 N. H., 329. The reason of the act, in view of the evil to be remedied, may prevail over even the literal terms used. Smith v. State, 28 Ind., 321; Robinson's case, 33 Maine, 564. And this will be true even though the construction, which is in accordance with reason, may be less favorable to the prisoner than the literal terms of the statute. Thomas' case, 29 Ind., p. 109. It has been held that the reason of a statute will be taken into account to limit its general terms. Benton's case, 18 N. H., 47; State v. Clark, 29 N. J., 96. The construction which best comports with reason and the general purview of the stat-

ute will be adopted when the terms are ambiguous and the letter of the statute will not be strictly followed when it would render the law unreasonable or iniquitous in its operation. Bradley's case, 8 Colorado, 599. The reason and plain intention of the statute has been followed even to the extent of correcting a mistaken reference to another statute or omitting words where the sense requires it. Chapman v. State, 16 Texas Crim. App., 76. The whole statute should be so construed as that it may have effect and not be found vain, illusive, or absurd. People v. Tanner, 128 N. Y., 416.

It is to be presumed that the Legislature in the use of language has used it in the sense in which it is ordinarily understood. In this connection it is worthy of note that the prosecuting officers in this State who draft criminal pleadings have, without a single exception, construed the language of the Act in question different from the construction placed upon it by the majority opinion of this court. Of course, it can not be said that these officers of the law have intentionally misconstrued this language or wilfully refused to follow it. It certainly should be, at least, strongly argumentative with this court that such language should be construed as herein contended, that the prosecuting officials of the State have so universally understood it.

I have added this much so as to make the record substantially complete and in the hope that this decision will at some later day receive, in the light of the authorities and guided by reason, further attention.